Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| VENICE PI, LLC,<br>　　　　　Plaintiff,<br>　　v.<br>SEAN O'LEARY JR., et al.<br>　　　　　Defendants. | Civil Action No. 17-cv-988TSZ |
| VENICE PI, LLC,<br>　　　　　Plaintiff,<br>　　v.<br>JONATHAN DUTCZAK, et al.<br>　　　　　Defendants. | Civil Action No. 17-cv-990TSZ |
| VENICE PI, LLC,<br>　　　　　Plaintiff,<br>　　v.<br>MARTIN RAWLS, et al.<br>　　　　　Defendants. | Civil Action No. 17-cv-991TSZ |
| VENICE PI, LLC,<br>　　　　　Plaintiff,<br>　　v.<br>INA SICOTORSCHI, et al.<br>　　　　　Defendants. | Civil Action No. 17-cv-1074TSZ |

PLAINTIFF'S OFFER OF PROOF - 1

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

| | |
|---|---|
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>GREGORY SCOTT, et al.<br>   Defendants. | Civil Action No. 17-cv-1075TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>YELENA TKACHENKO, et al.<br>   Defendants. | Civil Action No. 17-cv-1076TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>CELINA POTTER, et al.<br>   Defendants. | Civil Action No. 17-cv-1160TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>TONJA LAIBLE, et al.<br>   Defendants. | Civil Action No. 17-cv-1163TSZ |
| VENICE PI, LLC,<br>   Plaintiff,<br> v.<br>VICTOR TADURAN, et al.<br>   Defendants. | Civil Action No. 17-cv-1164TSZ |

PLAINTIFF'S OFFER OF PROOF - 2

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

| | |
|---|---|
| VENICE PI, LLC,<br>        Plaintiff,<br>    v.<br>JESSE COOPER, et al.<br>        Defendants. | Civil Action No. 17-cv-1211TSZ |
| VENICE PI, LLC,<br>        Plaintiff,<br>    v.<br>JASMINE PATTERSON, et al.<br>        Defendants. | Civil Action No. 17-cv-1219TSZ |
| VENICE PI, LLC,<br>        Plaintiff,<br>    v.<br>DAVID MEINERT, et al.<br>        Defendants. | Civil Action No. 17-cv-1403TSZ |

Plaintiff respectfully submits this response to the Court's Minute Order of November 3, 2017 (Dkt. #27) requesting an offer of proof regarding the present cases. As outlined further below, Plaintiff demonstrates that (1) the IP addresses cannot be spoofed or faked; (2) the content in question is enough to constitute copyright infringement and is playable; and (3) each Defendant is identified in a manner consistent with the controlling authority and Federal Rules of Civil Procedure, such that the complaint not only states a claim that is plausible, but rather one that is highly probable.

The present cases are brought by Plaintiff in an effort to curtail rampant copyright infringement. Through the use of BitTorrent technology, infringers are able to improperly copy and distribute the copyrighted works of the Plaintiff in the hopes of doing so anonymously and without repercussion. This illegal activity is crippling many movie makers in the industry, reducing demand through proper paid streaming channels by as much as thirty to forty percent. Accordingly, the present enforcement effort is not a vehicle to make money, but rather to end the widespread infringement that has otherwise gone on

PLAINTIFF'S OFFER OF PROOF - 3
INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

unchecked. If BitTorrent users can download and watch movies without consequence, many movie makers and content providers will not survive.

The legal fight against BitTorrent piracy is not being waged by the movie industry alone, or solely by the present Plaintiff. Likewise, the naming of John Doe defendants together with requests for discovery to determine actual identities is a long-established procedure that is approved by the courts and used by many other companies and entities such as Microsoft with respect to software (e.g., *Microsoft Corp. v. Doe*, No. C17-1587RSM, 2017 U.S. Dist. LEXIS 181205 (W.D. Wash. Nov. 1, 2017)), Yahoo! regarding trademark and false advertising (*Yahoo!, Inc. v. Doe*, No. 16-cv-02879-LHK (HRL), 2016 U.S. Dist. LEXIS 78143 (N.D. Cal. June 15, 2016)), John Wiley & Sons with respect to books (*John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185 (S.D.N.Y. 2012)), and Arista Records with respect to music (*Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110 (2d Cir. 2010)). In the foregoing cases, as with this one, the initial inquiry leads to IP addresses that were used to misappropriate copyrighted content. Initial discovery then identifies an account holder for the IP address, and subsequent discovery confirms the account holder is the infringer or (on rare occasions) leads to an additional or different defendant who may be named.

Plaintiff here does not merely follow the procedural path used by the exemplary parties identified above in the software, music and book publishing industries. Plaintiff also rigorously verifies the fact that piracy has occurred, seeks confirmation that it is associated with a particular defendant, and directs its enforcement against the worst offenders—typically those who have pirated numerous titles over a period of time. Only after a thorough investigation to address the same issues raised in the Court's Minute Order does Plaintiff proceeds with the filing of a complaint.

As discussed further below, the most difficult issue is the specific naming of the party Defendant. Plaintiff cannot name defendants specifically at the time of filing the complaint, and has always sought to do so only after discovery or other investigation would allow it to name the correct party, and always in accordance with the law and applicable rules.

PLAINTIFF'S OFFER OF PROOF - 4

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

The Plaintiff addresses the Court's specific requests below.

*(i)   whether and, if so, how an IP address can be either "spoofed" to or faked by a BitTorrent tracker, and what is the likelihood (quantified if possible) that each defendant's IP address was a false positive*

The IP addresses cannot be faked or spoofed. Plaintiff is not aware of a single instance in which an IP address identified as having been used for BitTorrent piracy was faked, spoofed, or was incorrectly identified.

These issues are quite technical, and therefore Plaintiff refers to the expert report of Benjamin Perino, Chief Executive Officer and Senior Developer at GuardaLey, Ltd., which licenses the backend software and servers to MaverickEye UG ("MEU"). Mr. Perino's report (1) provides his credentials (¶¶ 1-13), (2) describes in detail the technology (¶¶ 14-25), and (3) explains that the TCP/IP connections cannot be "spoofed" or yield false positive results (¶¶ 26-37) generally and as applied in these cases. Mr. Perino's report also cites and attaches reports from two independent experts, Dr. Simone Richter and Mr. Robert D. Young, who evaluated the technology. These experts further confirm the veracity of the system technology.

*(ii)   whether and, if so, how plaintiff can prove that the material allegedly tracked to each defendant's IP address was a "playable" and actionable segment of the copyrighted work at issue*

The pirated content is far more than the amount necessary to be actionable. In each case it is not only playable, but in most it amounts to the entire copyrighted work.

Defendants possess large segments of the copyrighted work in a form indicated as being available to be passed along to other peers. Mr. Perino's report describes what was detected via the direct TCP/IP connection with the IP address. (¶¶ 30-41). The report specifically addresses the question raised by the Court, and describes how the BitField data associated with the infringement capture(s) confirms that a "playable" and actionable segment of the copyrighted work at issue was in fact downloaded and offered for distribution via each Defendants' IP address. In fact, the BitField value confirms that for the most part 100% of the motion picture was confirmed as copied and offered for distribution, and in no event less

PLAINTIFF'S OFFER OF PROOF - 5
INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES ₚₗₗc
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

than 12% (which translated to approximately 11 minutes). (Perino Report, ¶¶ 42-45). These amounts are far more than a "playable" and actionable segment.

The Court's second question appears to suggest that the copying could be *de minimis* and, if so, not actionable under copyright law. "As a rule, a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986). That is not the case here. In accordance with the Perino Report, the amount of the work at stake is not *de minimus*, but rather amounts to large portions of the work or the entirety of the work.[1]

*(iii)* **what evidence, if any, can plaintiff currently present, beyond mere association with an IP address, that each defendant engaged in the alleged copyright infringement**

At the time the complaint is initially filed, Plaintiff knows the IP address, date and time of the copyright infringement, but does not know the name of the account holder for that IP address, nor the name of the person responsible for the infringement. In most cases the responsible party is the account holder, but in a small number of cases it may be a different person who had access to a computer through the IP address. In such cases, discovery is required to identify the proper party and Plaintiff can only either (1) obtain Court permission and conduct discovery prior to naming a specific defendant, including

---

[1] Noteworthy as directly applicable to the present BitTorrent case is the recent decision in the District of Oregon in granting summary judgment and finding willful infringement. Therein the court was faced with a similar *de minimis* argument of whether defendant's downloading of only a portion of the movie precluded finding infringement. The court's response was as follows:

> As noted by Clear Skies, the Ninth Circuit has held '[b]oth uploading and downloading copyright material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction.' *Columbia Pictures Indus. Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). Kainu admitted to downloading the Movie. Whether or not he watched the Movie is irrelevant. Equally irrelevant is the possibility Kainu downloaded only a portion of the Movie. '[A] taking may not be excused merely because it is insubstantial with respect to the infringing work. . . . 'no plagiarist can excuse the wrong by showing how much of the work he did not pirate.'' *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S. 669, 56 S. Ct. 835, 80 L. Ed. 1392 (1936); and citing *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980) ("talcing of 55 seconds out of 1 hour and 29-minute film deemed qualitatively substantial."))

*Clear Skies Nev., LLC v. Kainu*, No. 3:16-cv-811-AC, 2017 U.S. Dist. LEXIS 149342, at *20-21 (D. Or. Aug. 21, 2017) (some internal citations omitted).

PLAINTIFF'S OFFER OF PROOF - 6

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

inquiries directed to the account holder, or (2) obtain the identity of the account holder and then name the person tied to the account, and thereafter seek to amend the pleading if discovery indicates a different party is responsible.

**Identifying information in this case**. In these cases, Plaintiff has been permitted to obtain account holder information but not allowed to conduct further discovery prior to being required to identify defendants by name. Nonetheless, Defendants are named with greater certainty than merely the fact that they are the account holder, and with facts that more than make the allegation of infringement by the named defendant plausible. Thus, at this stage, Plaintiff established (and has alleged) that copyright infringement of Plaintiff's motion picture occurred at the specific IP address assigned to the named Defendant at a specific date and time (Dkt. 11 at ¶ 10, ¶¶ 18-23). In addition, the infringement was not a single isolated event, but rather an instance of significant BitTorrent activity in which Defendant's IP address participated during the relevant period (Id. at ¶ 12; *see also* Perino Report, ¶¶ 38-41 & Ex. D[2]). Given the amount of activity (that is, as noted above, Defendants are repeat offenders), there is a high probability that the account holder is directly involved and aware of the activity. The materials shared and downloaded would not be of interest to a child, thereby suggesting an adult at the residence (Id.), and the physical location and layout of Defendant's residence makes it unlikely that his IP address was hijacked by a neighbor or passerby (Id. at ¶ 14).[3]

The above allegations, tied to the background investigation, satisfy the requirements to state a claim for relief. A complaint fails to state a claim upon which relief may be granted if the plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead "factual content that allows the court to draw the

---

[2] Mindful of the strict requirements of LR 5(g) regarding treatment of sensitive information, Plaintiff has made it best efforts to redact out or otherwise remove adult titles that may have appeared in the additional evidence logs in an effort to avoid disclosure of information that may lead to embarrassment by Defendants with the Court's order to produce information available at the present time supporting Plaintiff's claims.

[3] See also the expert report of Dr. G. Mitchell of Future Focus, Inc. prepared specifically for *Cobbler v. James*, Case No. 15-cv-1430TSZ to address the WiFi questions raised by the Court, discussed below.

PLAINTIFF'S OFFER OF PROOF - 7
INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should only dismiss a complaint for failure to state a claim if, taking all factual allegations as true, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 662; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). This standard is not, however, akin to a "probability requirement." Rather, it only asks for "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In the present case, the fact of infringement is not only plausible, it is highly probable.

**John Doe enforcement**. The only way Plaintiff can enforce its rights at all is through the use of the John Doe complaint, coupled with requests for discovery allowing it to name defendants with particularity. On this point, Plaintiff points out that there is a rich history in federal jurisprudence in naming John Doe as a defendant where the facts establish that a wrongful act has occurred but where the identity of the party is not certain. The Ninth Circuit has stated that while the use of "John Doe" to identify a defendant is not favored, it nonetheless has held that:

> situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). In *Gillespie*, the court held that the "district court abused its discretion in not permitting the discovery sought by the appellant and the court's subsequent dismissal of the complaint was error." *Id*. at 643.

Even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Ninth Circuit has followed *Gillespie*. *See Crowley v. Bannister*, 734 F.3d 967 (9th Cir. 2013) (finding abuse of discretion in failing to allow discovery and to name correct defendant). Indeed, this Court has also

PLAINTIFF'S OFFER OF PROOF - 8

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES™
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

followed *Gillespie* in allowing an action to be filed against John Doe defendants and approving of discovery to learn the identity of the defendants. In *Microsoft Corp. v. Doe*, No. C17-1587RSM, 2017 U.S. Dist. LEXIS 181205 (W.D. Wash. Nov. 1, 2017), Microsoft was granted permission to conduct discovery by obtaining names of individuals from Comcast who are account subscribers on affiliated Comcast accounts. The issue is identical to that posed here—Microsoft can determine with certainty, ***at most***, that a specific person is the account holder linked to the IP address that is tied to the copyright infringement. Just as with the present case, Microsoft must then name an account holder (who is reasonably calculated to be the responsible party), and may later seek to amend the pleading to name a different party based upon information obtained in discovery.

Such John Doe complaints are commonly used, and discovery permitted, where there is no other manner of identifying the defendant with precision at the time of filing the complaint. *E.g.*, *Richie v. Doe*, No. CV 17-5833-JAK (KK), 2017 U.S. Dist. LEXIS 145919 (C.D. Cal. Sep. 7, 2017) (granting discovery); *see also* the Yahoo!, John Wiley, and Arista cases cited above. Likewise, the initial discovery in such cases is the same as allowed here—the determination of a person tied to an IP address so that the complaint can be amended to name that person specifically, even though there is the possibility (however small) that the actual offender may be yet a different person who had access to that account. Subsequent discovery, however, can readily lead to such person.

**Discovery directed to defendant identification**. In earlier similarly situated cases, plaintiffs sought leave to conduct early depositions or other discovery calculated to enable defendants to be named with even greater certainty. The Court, however, denied leave for such discovery while allowing the possibility of amending the pleadings to name different defendants if appropriate. For example, by Order dated January 26, 2016, the Court denied the Rule 45 leave motion and instructed the plaintiff as follows:

> Plaintiff has the names of the holders of each IP address that allegedly infringed its film, and can proceed by naming those parties as defendants and conducting

PLAINTIFF'S OFFER OF PROOF - 9

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES℠
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

discovery in the normal course prescribed by the Federal Rules. *See, e.g., Hard Drive Prods., Inc. v. Doe*, 2012 WL 90412, *2-3 (E.D. Cal. Jan. 11, 2012) (denying request to depose identified IP address holders). To the extent subsequent case developments show that the IP holders are not the infringing parties, plaintiff may seek to amend the Complaint as necessary.

*Cobbler v. James*, Case No. 15-cv-1430TSZ (Dkt. 16); *see also Dallas Buyers Club v. Does*, Case Nos. 15-cv-134RAJ (and others) (Dkt. 48). In this action, Plaintiff is proceeding in accordance with the guidance above, and respectfully submits that proceeding in this fashion is proper and in accordance with the applicable laws and Civil Rules. Indeed, Plaintiff wants nothing more than to name and pursue the actual infringer, and to follow the Civil Rules and guidance of the Court in doing so.

When allowed to proceed with formal discovery after naming, such as in *Cobbler v. James*, Case No. 15-cv-1430TSZ, plaintiffs seek reasonable discovery to confirm infringement, such as information regarding: (1) Defendant's exposure to computers;[4] (2) Each computer device at Defendant's residence; (3) The identities of individuals who set up those devices;[5] (4) Communication between Defendant and the ISP with respect to copyright notices;[6] (5) An under oath statement on whether Defendant knowingly downloaded any computer file using a file sharing program, and how and when he first learned of BitTorrent;[7] (6) the names of any BitTorrent programs located on any computer in Defendant's home; (7) a forensically sound copy of the computer devices and other data storage devices in the home; (8) the purchase of a new computer device; and (9) The use of any forensic software. This sort of additional discovery, if permitted, could further confirm the identity of the proper defendant.

The foregoing inquiries are, of course, discovery, but the Plaintiff respectfully disagrees that it amounts to a "fishing expedition" or an effort in coercion. As set forth above, it is highly probable (not merely plausible) that the account holder is the responsible party. Though there may be isolated instances

---

[4] In Plaintiff's experience, defendants who hold a computer science degree or who are in the information technology industry are more likely to be BitTorrent users.
[5] Such individuals would know if the modem and router were unsecured.
[6] Receipt of numerous DMCA notices would make it more likely that Defendant was the infringer since the infringement continued despite notice. This may also give rise to a claim of contributory infringement.
[7] Interrogatory responses are under oath and Plaintiff merely sought a denial under oath.

PLAINTIFF'S OFFER OF PROOF - 10
INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

where another individual was involved, they have proven to be quite rare. Further discovery directed to the identification of the proper party is not at all a fishing expedition because the proper party is nearly always the account holder and is accurately named in the first place. Consequently, further inquiry is no different here than in any other case in which the Plaintiff is in possession of more than enough facts to make a claim plausible, but needs some discovery to fully prove its case.

**The possibility of WiFi use by third parties**. The Court asked the question in *Cobbler v. James*, Case No. 15-cv-1430TSZ, whether and, if so, the extent to which an unsecured Wi-Fi connection can be used to share files via the BitTorrent protocol, and what is the likelihood (quantified if possible) that a defendant's allegedly unsecured Wi-Fi system was accessed by someone from outside their home. While not asked in this case, the answer is pertinent to the question raised regarding the evidence that each Defendant engaged in the copyright infringement. The expert report of Dr. G. Mitchell of Future Focus, Inc. was prepared specifically for the *Cobbler* case to address the WiFi questions raised by the Court. (Dkt. 81 therein). Dr. Mitchell's opinion was based on the information presently available given that no discovery had been obtained—similar to the present case in which no discovery has yet been allowed. While a specific analysis would need to be completed for each Defendant in this case in order to have complete certainty, Dr. Mitchell's analysis would likely produce the same results in this case. In general, Dr. Mitchell opines that there is a low probability of unsecured WiFi or successful access by someone from outside the residence given well-known WiFi degradation issues. This information is relevant to establish that it is probable that the Defendant or other resident of the household (as opposed to someone outside the household or transient guest or visitor) engaged in the copyright infringement. To the extent that it is theoretically possible, though extremely unlikely, that a third party used a defendant's WiFi, this issue can be addressed and resolved through discovery.

**Claims Against Mr. Miller.** The Court's order refers to the naming of Defendant Wilbur Miller, now deceased, in two different cases (17-cv-990TSZ and 17-cv-1075TSZ). For the reasons described above, no plaintiff in a BitTorrent case—including the others such as Microsoft, Yahoo!, John Wiley, and Arista—can *guarantee* that the IP account holder is the infringer without targeted

PLAINTIFF'S OFFER OF PROOF - 11

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONESᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

early discovery that the Court has not allowed. While Mr. Miller's case appears egregious given his age and capacity, it is also an outlier as the rare case in which the account holder appears not to be the infringer.

Plaintiff further submits that counsel acted properly and with due consideration for Mr. Miller under the circumstances. In the 990 case, Mr. Miller was first named as a party on August 31, 2017, and in the 1075 case two weeks later on September 15, 2017. On or about October 13, 2017, Plaintiff learned that Mr. Miller had died on September 23, 2017. Within a week thereafter, Plaintiff promptly dismissed the case on October 18, 2017. (Dkt. 31) Shortly thereafter, upon recognizing that the same Mr. Miller was named as a party in the second case, on October 27, 2017 Mr. Miller was dismissed from the 1075 action. (Dkt. 20). Plaintiff respectfully submits that infringement *did* occur through Mr. Miller's account, but that this was a prompt and appropriate way of handling the issue.

**Engaging in Preliminary Discovery.** The Court's Order further directs Plaintiff's counsel not to communicate with any defendant until further order of the Court, and states that such conversations are not permitted until after a Rule 26(f) conference occurs. While counsel will of course comply with the Court's order, counsel respectfully submits that (1) counsel has never understood Rule 26 to prohibit informal investigations, and submits that it does not, (2) the communications were initiated by the defendants, and (3) such communications are nearly always part of an effort to settle the dispute, which would not be possible if no communications are allowed. On this last point, it is well established that private parties may settle their controversies at any time. *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 309 (1897), cited with approval in *Dallas Buyers Club v. Does*, Case Nos. 15-cv-134RAJ (and others) (Dkt. 48, p. 4).

Parties routinely engage in discussions about the merits of cases and possibilities of settlement before the filing of the action and before a Rule 26(f) conference. Such discussions allow both sides to better understand the merits of the positions and often lead to settlement. Plaintiff's counsel again reiterates that it will follow the recent Order regarding communications

PLAINTIFF'S OFFER OF PROOF - 12

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

in this case, but is not aware of any rule or law prohibiting such communications and had no reason to believe they were in any way improper. Quite the opposite, both convention and legal authorities hold that informal discussions are permissible and are outside the reach of the Federal Rules of Civil Procedure.

As the Central District of California recently explained, informal investigations do not fall within the scope of formal discovery regulated by Rule 26. *In re BofI Holding, Inc. Sec. Litig.*, 318 F.R.D. 129 (S.D. Cal. 2016). Indeed, in the Advisory Committee Note to Rule 26(d) the Committee expressly stated that "[t]his subdivision is revised to provide that formal discovery— as distinguished from interviews of potential witnesses and other informal discovery—not commence until the parties have met and conferred as required by subdivision (f)." For this reason, the *In re BofI Holding* court stated that it was aware of "no authority indicating that the Court has the power to issue protective orders prohibiting informal investigations conducted before discovery has commenced." *In re BofI Holding*, 318 F.R.D. at 133.

Plaintiff further respectfully submits that discussions its counsel had with either represented of unrepresented defendants occurred only because of voluntary contact by such individuals that were almost always were in the context of settlement discussions. These typically occurred after individuals received the Court-ordered notification of the subpoena to the ISP from the ISP, after receipt of the waiver of service request, or after process service. While Plaintiff has complied with the Court order not to communicate with any unrepresented individual, it respectfully submits that the order is contrary to the purpose of Rule 26(d)(1), which is intended to preclude formal discovery as opposed to the natural exchange that occurs between parties when seeking to amicable understand and resolve, if possible, a claim. As such, Plaintiff requests that the order be revised and that the prohibition be removed.

## THE NEED FOR COPYRIGHT ENFORCEMENT

The inability to enforce copyrights would deal a crippling blow to rights holders, and would fan the flames of piracy. In the present case, the motion picture contains the work of numerous

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES™
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

actors, actresses and others who invested their own time and money to bring their motion picture to fruition. The result of the piracy is not merely the loss of a few sales, but the erosion of an entire industry impacting countless people that contribute to the final product in this case and in many others. This is further confirmed by the declaration of Plaintiff's representative, Michael Wickstrom, articulating the need for enforcement actions like the present cases.

Plaintiff's rights in this case are no less important than those of any other rights holders. As explained by Senator Levin in Congressional hearings on peer-to-peer Internet piracy:

> In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking—illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that—stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used—called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm. (Sen. Leven, Senate Hrg. 108-275, Sept. 30, 2003)

As further documented in Plaintiff's complaint and supporting papers filed in this case, Plaintiff has more than met its burden of asserting a *prima facie* claim for copyright infringement that can withstand a motion to dismiss. Plaintiff has alleged that: (a) it owns the exclusive rights under the registered copyright for the motion picture, and (b) Defendants copied and distributed the copyrighted motion picture without Plaintiff's authorization. These allegations state a claim for copyright infringement. *See* 17 U.S.C. §106(1)(3); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) (Napster users who upload file names to the search index for others to copy violate distribution rights and users who download files containing copyrighted music violate reproduction rights); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted,

PLAINTIFF'S OFFER OF PROOF - 14

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1  such swapping, which involves making and transmitting a digital copy of the music, infringes
2  copyright.").

3  Plaintiff submits that it has taken reasonable and prudent steps to investigate its claim and
4  to name the party responsible. In accordance with the Court's request, it has undertaken significant
5  additional steps to provide multiple expert reports confirming the technology and specific
6  infringement capture and reference information to support its claims. Accordingly, Plaintiff
7  respectfully submits that the cases should not be summarily dismissed with prejudice.

8  RESPECTFULLY SUBMITTED December 1, 2017.

9                                 s/David A. Lowe, WSBA No. 24,453
10                                 Lowe@LoweGrahamJones.com
                                LOWE GRAHAM JONES<sup>PLLC</sup>
11                                 701 Fifth Avenue, Suite 4800
                                Seattle, WA 98104
12                                 T: 206.381.3300

13                                 Attorneys for Plaintiff

14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S OFFER OF PROOF - 15

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES <sub>PLLC</sub>
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served to all counsel or parties of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

s/ David A. Lowe

PLAINTIFF'S OFFER OF PROOF - 16

INIP-6-0088P17 OfferofProof

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301