Honorable Thomas S. Zilly

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

| | |
|---|---|
| VENICE PI, LLC,<br><br>                              Plaintiff,<br><br>     v.<br><br>SEAN O'LEARY JR., et al.<br><br>                              Defendants. | Civil Action No. 17-cv-988TSZ |
| VENICE PI, LLC,<br><br>                              Plaintiff,<br><br>     v.<br><br>JONATHAN DUTCZAK, et al.<br><br>                              Defendants. | Civil Action No. 17-cv-990TSZ |
| VENICE PI, LLC,<br><br>                              Plaintiff,<br><br>     v.<br><br>MARTIN RAWLS, et al.<br><br>                              Defendants. | Civil Action No. 17-cv-991TSZ |
| VENICE PI, LLC,<br><br>                              Plaintiff,<br><br>     v.<br><br>INA SICOTORSCHI, et al.<br><br>                              Defendants. | Civil Action No. 17-cv-1074TSZ |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - i

INIP-6-0088P18 RESPSC



701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

| | |
|---|---|
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>GREGORY SCOTT, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1075TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>YELENA TKACHENKO, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1076TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>CELINA POTTER, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1160TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>TONJA LAIBLE, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1163TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>VICTOR TADURAN, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1164TSZ |

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - ii

LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>JESSE COOPER, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1211TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>JASMINE PATTERSON, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1219TSZ |
| VENICE PI, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>DAVID MEINERT, et al.<br><br>                    Defendants. | Civil Action No. 17-cv-1403TSZ |

Plaintiff respectfully submits this response to the Court's Minute Order of January 8, 2018 (Dkt. 32).

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - iii

INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1

# TABLE OF CONTENTS

A.    INFRINGEMENT IS PURSUED PROFESSIONALLY, WITHOUT
      ABUSE ..................................................................................................... 1

      1.    Plaintiff's enforcement cannot be equated with prior bad
            actors ............................................................................................... 2

      2.    Plaintiff has Strictly Adhered to the Court's Ordered
            Procedure on Discovery, but Needs Early Discovery to
            Name Defendants with Specificity ........................................... 4

      3.    The Court's Order Forbidding Any Communication with
            Defendants Should be Rescinded............................................... 5

      4.    Settlement Discussions are Appropriate, and the
            Settlements are Fair....................................................................... 6

B.    THE ENTITY STATUS IS ACCURATELY STATED, AND THE
      COMPLAINTS STATE A CLAIM................................................................ 8

      1.    Entity Status of Plaintiff and Compliance with LR 7.1(a)..................... 8

      2.    Plaintiff States a Cognizable Claim that Should Not be
            Dismissed ....................................................................................... 9

C.    THE COURT'S OTHER CONCERNS ARE BASED ON
      INACCURACIES AND UNSUPPORTED ASSERTIONS ........................... 11

      1.    No Ethical Issues are Implicated by Plaintiff's
            Investigations; Plaintiff's Data Providers are Not Subject to
            the Licensing Requirements of RCW 18.165, and
            Committed no Crime..................................................................... 12

      2.    Plaintiff's Investigators are Not "aliases or even fictitious"................ 17

      3.    Technology Used in BitTorrent Copyright cases is Reliable
            and verified by Experts and Other Courts............................... 18

      4.    MEU'S Technology Does Not Yield False Positives nor
            Does It Employ Hacking or Spoofing of the IP Addresses ................. 20



1    This is the second order issued by the Court requesting an offer of proof from Plaintiff in these

2    cases. Plaintiff and its undersigned counsel take the Court's concerns seriously and wish to address each

3    area of concern to the best of their ability. As a preliminary matter, Plaintiff appreciates that the source

4    of concern for these cases generally may originate from plaintiffs or law firms who have broken ethical

5    or procedural rules in the enforcement of copyright interests in previous cases of this general nature, and

6    that there are defense-group websites advancing an array of assertions about various aspects of such

7    enforcement generally. To that end, Plaintiff and its counsel welcome the opportunity to demonstrate that

8    their practices comply with all applicable laws, the Civil Rules, and the Rules of Professional Conduct.

9    Plaintiff respectfully submits that all assertions to the contrary find no support in the evidence or law.

10   They are, at best, mistaken, and at worst are false and motivated by a fundamental disagreement over

11   whether copyright law should continue to prohibit and punish infringers such as those identified in this

12   case. Plaintiff invested considerable time and provided extensive testimony and evidence in response to

13   the Court's earlier November 3, 2017 Minute Order (Dkt. #27) in its December 1, 2017 response.

14   (Dkt. 28) In response to the Court's specific questions, Plaintiff submitted reports from three separate

15   experts demonstrating that (1) the IP addresses cannot be spoofed or faked; (2) the content in question is

16   enough to constitute copyright infringement and is playable; and (3) each Defendant is identified in a

17   manner consistent with the controlling authority and Federal Rules of Civil Procedure, such that the

18   complaint not only states a claim that is plausible, but rather one that is highly probable. (Id. & Dkt. 29,

19   29-1) Plaintiff also submitted a declaration of Michael Wickstrom, a Senior Vice President personally

20   responsible for the copyright enforcement efforts of Plaintiff and its related companies, documenting the

21   ongoing and substantial hardship being caused to the industry by the rampant infringement occurring in

22   this and other districts. (Dkt. 30) In this submission, Plaintiff will address the additional concerns raised

23   by the Court.

24   **A.    INFRINGEMENT IS PURSUED PROFESSIONALLY, WITHOUT ABUSE**

25       The Court has expressed concern for the potential for abuse in cyber-piracy enforcement

26   efforts. (See, e.g., Dkt. #27 ¶¶ 2 n.1 and 3 and *Cobbler Nevada, LLC v. Kevin James*, Case



No. C15-1430TSZ, Dkt. #78) Plaintiff respectfully submits that there is no abuse here, and that its pursuit of infringers has been diligent, respectful, and in accordance with applicable laws and rules.

### 1.   *Plaintiff's enforcement cannot be equated with prior bad actors*

The current enforcement efforts in this jurisdiction are distinct from prior BitTorrent efforts in this and other jurisdictions. Many prior BitTorrent cases were brought by small media companies in the adult film industry, such as by the Prenda Law firm or Malibu Media. Prenda is now a defunct firm whose principals were placed under federal indictment in December 2016 for "an elaborate scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country." *Indictment, United States v. Hansmeier,* No. 0:16-cr-00334 (D. Minn. Dec 14, 2016) Prenda was found to have lied to the court, forged documents, practiced identity theft and to have even "seeded" their clients' movies on BitTorrent Networks, which made them available for download in the first place. *See id.; Ingenuity 13 LLC v. Doe,* No. 2:12-cv-8333-ODW (JCx), 2013 WL 1898633, at *2-3, *5 (C.D. Cal. May 6, 2013). Plaintiff shares any concern the Court may have with this sort of enforcement; however, it would be unfair and inaccurate to assume that all BitTorrent-based copyright enforcement is conducted in such an unfair or unethical manner.

Malibu Media apparently uses similar forensic technology to identify BitTorrent infringers, albeit obtained from different data providers and licensees than Plaintiff uses in these cases. The focus of Malibu Media is on adult titles. Some courts have expressed concern that the adult subject matter in such cases may lead to coercion of defendants—that is, "there is a fear that regardless of a defendant's actual culpability, he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case . . . ." *Malibu Media, LLC v. Doe,* 285 F.R.D. 273, 278 (S.D.N.Y. 2012) (dealing with pornographic content). However, this concern is more prevalent in cases involving allegations of infringement on pornographic content. Such concerns are not as prevalent where, as in these cases, Plaintiff is associated with a major movie studio—in this case Voltage Pictures—whose titles are mainstream films featuring

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 2
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES™

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

well-known actors and director, such as *Once Upon a Time in Venice*, *A Family Man*, *The Cobbler* and *Dallas Buyers Club*. That said, Plaintiff's practice in these and other similar cases is to avoid behaviors that seek to threaten, embarrass, or otherwise coerce defendants into settling. In this sense, the association of defendants with the activity complained of here is no different than in a typical case for infringement of a copyright, such as, for example, the many thousands of cases brought by the recording industry's anti-piracy cases seeking enforcement of music copyrights or the computer-software industry's anti-piracy cases seeking enforcement of copyrights in computer software. *See cases infra.*

Contrary to the enforcement efforts identified above, for example in the pornographic film area, BitTorrent enforcement efforts in this jurisdiction have, since initiated by Plaintiff's counsel's firm in July 2014, been undertaken with good faith diligence, transparency and every effort at strict adherence with the law and applicable court rules. Indeed, as explained by motion picture executives such as Mr. Wickstrom, (Dkt. 30), the motivation of such enforcement efforts is to educate, deter future wrongdoing, and seek compensation from responsible parties. In other words, such enforcement efforts are designed to right a private wrong by obtaining compensation for the devaluation of copyrighted works wrought by piracy and perform a public good by upholding and enforcing the copyright law as it currently exists—which is precisely the purpose of the legal system.

The legal fight against BitTorrent piracy is not being waged by the movie industry alone, or solely by the present Plaintiff. Likewise, the naming of John Doe defendants together with requests for discovery to determine actual identities is a long-established procedure that is approved by the courts and used by many other companies and entities such as Microsoft with respect to software (e.g., *Microsoft Corp. v. Doe*, No. C17-1587RSM, 2017 U.S. Dist. LEXIS 181205 (W.D. Wash. Nov. 1, 2017)), Yahoo! regarding trademark and false advertising (*Yahoo!, Inc. v. Doe*, No. 16-cv-02879-LHK (HRL), 2016 U.S. Dist. LEXIS 78143 (N.D. Cal. June 15, 2016)), John Wiley & Sons with respect to books (*John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185 (S.D.N.Y. 2012)), and Arista Records with respect to music (*Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110 (2d Cir. 2010)). In the foregoing

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 3
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

cases, as with these, the initial inquiry leads to IP addresses that were used to misappropriate copyrighted content. Initial discovery then identifies an account holder for the IP address, and subsequent discovery confirms the account holder is the infringer or (on rare occasions) leads to an additional or different defendant who may be named.

Plaintiff here does not merely follow the procedural path used by the exemplary parties identified above in the software, music and book publishing industries. Plaintiff also rigorously verifies the fact that piracy has occurred, seeks confirmation that it is associated with a particular defendant, and directs its enforcement against the worst offenders—typically those who have pirated numerous titles over a period of time. Only after a thorough investigation to address the same issues raised in the Court's Minute Order does Plaintiff proceeds with the filing of a complaint.

### 2.    *Plaintiff has Strictly Adhered to the Court's Ordered Procedure on Discovery, but Needs Early Discovery to Name Defendants with Specificity*

The most difficult issue in cases such as these is the specific naming of the party Defendant. Defendants use BitTorrent technology as part of an intentional effort to steal movies anonymously, hiding behind their computer interfaces. Plaintiff cannot name defendants specifically at the time of filing the complaint, and has always sought to do so only after discovery or other investigation would allow it to name the correct party, and always in accordance with the law and applicable rules. In earlier similarly situated cases, plaintiffs sought leave to conduct early depositions or other discovery calculated to enable defendants to be named with even greater certainty. The Court, however, denied leave for such discovery while allowing the possibility of amending the pleadings to name different defendants if appropriate. For example, by Order dated January 26, 2016, the Court denied the Rule 45 leave motion and instructed the plaintiff as follows:

> Plaintiff has the names of the holders of each IP address that allegedly infringed its film, and can proceed by naming those parties as defendants and conducting discovery in the normal course prescribed by the Federal Rules. *See, e.g., Hard Drive Prods., Inc. v. Doe*, 2012 WL 90412, *2-3 (E.D. Cal. Jan. 11, 2012) (denying request to depose identified IP address holders). To the extent subsequent case

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 4

INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

developments show that the IP holders are not the infringing parties, plaintiff may seek to amend the Complaint as necessary.

*Cobbler v. James*, Case No. 15-cv-1430TSZ (Dkt. 16); *see also Dallas Buyers Club v. Does*, Case No. 15-cv-134RAJ (and others) (Dkt. 48). Accordingly, Plaintiff has proceeded in accordance with such orders, and respectfully submits that proceeding in this fashion is proper and in accordance with the applicable laws and Civil Rules. Indeed, Plaintiff wants nothing more than to name and pursue the actual infringer, and to follow the Civil Rules and guidance of the Court in doing so.

As stated in Plaintiff's prior response, (see Dkt. 28, p. 10), when allowed to proceed with formal discovery after naming, such as in *Cobbler v. James*, Case No. 15-cv-1430TSZ, plaintiffs seek reasonable discovery to confirm infringement. This sort of additional discovery, when permitted, could further confirm the identity of the proper defendant and is no different than in any other case in which the Plaintiff is in possession of more than enough facts to make a claim plausible, but needs some discovery to fully prove its case.

In summary, Plaintiff submits that its actions (and those of undersigned counsel) in pursuit of rampant copyright infringement have been appropriate at all times.

### 3. The Court's Order Forbidding Any Communication with Defendants Should be Rescinded

The Court's November 3, 2017 Minute Order forbade Plaintiff's counsel from "[any] communica[tions] with any unrepresented defendant in any manner for any purpose." (Dkt. 27 p. 4) The undersigned counsel has not engaged in any discovery in advance of a Rule 26(f) conference, and has complied with the Federal Rules of Civil Procedure. Although (prior to the above order) counsel has communicated with defendants informally, and has sought information through such communications, correspondence of this sort occurs in every civil action and is not precluded by the proscription of Rule 26(d). As the Central District of California recently explained, informal investigations do not fall within the scope of formal discovery regulated by Rule 26. *In re BofI Holding, Inc. Sec. Litig.*, 318 F.R.D. 129 (S.D. Cal. 2016). Indeed, in the Advisory Committee Note to Rule 26(d), the Committee expressly stated that "[t]his subdivision is revised to provide that formal discovery—as distinguished from

interviews of potential witnesses and other informal discovery—not commence until the parties have met and conferred as required by subdivision (f)." For this reason, the *In re BofI Holding* court stated that it was aware of "no authority indicating that the Court has the power to issue protective orders prohibiting informal investigations conducted before discovery has commenced." *In re BofI Holding*, 318 F.R.D. at 133. Plaintiff submits that the notice letters of the sort cited above (or subsequent emails or phone conversations, which are typically initiated by the defendants in response to such letters) do not constitute discovery under Rule 26. Moreover, the letters sent by Plaintiff or its counsel here are respectful, professional, and courteous. Many defendants also respond to the fact of being named and served with a complaint by reaching out to Plaintiff's counsel in an effort to resolve the dispute or to discuss it, and presently (in accordance with the above order) counsel must refuse to take any phone calls, and cannot return any calls or emails. Plaintiff contends that it should be allowed to communicate with Defendants.

### 4. *Settlement Discussions are Appropriate, and the Settlements are Fair*

Likewise, settlement discussions are permissible and appropriate. Parties routinely engage in discussions about the merits of cases and possibilities of settlement before the filing of the action and before a Rule 26(f) conference. Such discussions allow both sides to better understand the merits of the positions and often lead to settlement. As the Central District of Illinois stated:

> **One person's cottage industry in harassing lawsuits is another person's vigilant defense of property rights**. … The proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people. The volume of lawsuits alone does not indicate any impropriety. The fact that [Plaintiff], and others, may settle these suits quickly also does not indicate any wrongdoing. **Settlement of civil disputes is generally a positive outcome, not a negative one**.

*Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *5 (C.D. Ill. Sept. 18, 2012) (emphasis added). It is also well established that private parties may settle their controversies at any time. *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 309 (1897), cited with approval in *Dallas Buyers Club v. Does*, Case Nos. 15-cv-134RAJ (and others) (Dkt. 48, p. 4). If there can be

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

no settlement discussions, then the parties and the Court will expend far more time and resources in the effort to resolve these actions.

Although communications, informal discovery, and settlement efforts should all be permissible, Plaintiff submits that it has complied with the *Venice* order cited above not to communicate with any unrepresented individual. At the same time, Plaintiff respectfully submits that the order is not founded in the Federal Rules and is contrary to the objectives of a speedy and efficient resolution of disputes. As such, Plaintiff has requested that the order be revised and that the prohibition be removed. (See, e.g., Dkt. 27 p. 4)

In addition, Plaintiff has settled its disputes with the defendants in these enforcement actions in a manner that is fair and cannot be considered coercive, extortionist, or otherwise beyond the law. On this issue, Plaintiff submits three main points. First, in the course of settling disputes, and as a condition of such settlement, Defendants acknowledge and take responsibility for the accused piracy. Plaintiff is not aware of any instance in which any settlement was entered into in which the copyright infringement did not actually occur, and would never knowingly do so. Second, the settlements are fair as to the amount. On average, the settlements are on par with the amount granted by the Court when entering default judgments. There are no improprieties and at all times the practices are intended to be fair and equitable under the circumstances while enforcing Plaintiff's rights under the law. Third, as confirmed by Plaintiff's representative in the motion picture industry, these anti-piracy efforts are absolutely not a revenue model. To the contrary, as explained by Mr. Wickstrom, they are part of a critical effort necessary to meet distributor obligations and ensure the continued viability of the industry:

> Often a title is provided to a distributor with minimum guarantees. But when the title is pirated, many distributors respond with a demand for reduction in the minimum guarantee, or some other assurance that Venice PI, LLC is fighting the piracy, such as the transmission of DMCA notices to Internet Service Providers and, when necessary, commencement of litigation against infringers. Simply put, to support our distributors and our agreements with them, we must fight piracy and we must be proactive.

LOWE GRAHAM JONES ᴘʟʟᴄ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Neither Venice PI, LLC nor Voltage Pictures seek to use the Court system to profit from infringement. Revenues from our licensing and distribution agreements are the dominant driver of Voltage's revenues. As such, our anti-piracy efforts are not a revenue model. The main goal of our anti-piracy effort is to provide education about the harmful effects of piracy in the movie industry and to deter copyright infringers. Indeed, we currently send out hundreds of thousands of DMCA notices to infringers before filing suit and prefer to stop piracy outside of litigation.

. . .

*We want the courts to know that we need the law to be enforced to ensure the survival of our business. It is our hope that by upholding the law, courts will allow all creative people the ability to make a living through the authorized distribution of the works through legitimate channels.* To support the creative team, we implemented the policy that any net compensation received from our anti-piracy program flows into the royalty 'waterfall' and gets distributed to those who worked on the motion picture. This often includes technicians, general services, actors, directors and others in the same manner as ticket sales or other systems.

(Dkt. 88, ¶¶ 12-17, emphasis added)

## B.  THE ENTITY STATUS IS ACCURATELY STATED, AND THE COMPLAINTS STATE A CLAIM

The Court's latest *sue sponte* Minute Order of January 8, 2018 (Dkt. 32) raised questions about Plaintiff's parent entities, concluding that they appear not to exist. As set forth below, Plaintiff's submissions on this point have always been accurate. The Court also questioned whether the complaint states a claim for relief, and this is addressed below as well.

### 1.  *Entity Status of Plaintiff and Compliance with LR 7.1(a)*

In response to the Court's show cause order on points (a) and (b), (Dkt. 32 ¶ 5), Plaintiff states that it is an active, properly formed California limited liability company. (Wickstrom Dec. ¶ 5 & Ex. A) Plaintiff is owned and managed by Lost Dog Productions, LLC, a Nevada limited liability company. (Id. & Ex. B) Lost Dog Productions, LLC is in turn owned by Voltage Productions, LLC, a Nevada limited liability company. (Id. & Ex. C) Voltage Pictures, LLC, an affiliated entity, is a California limited liability company. (Id. & Ex. D)

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Accordingly, Plaintiff is a properly formed limited liability company, owned and managed by a Nevada limited liability company. Because Plaintiff's Local Civil Rule 7.1(a) corporate disclosure document (see, e.g., C17-988 Dkt. 4) correctly disclosed these facts, Plaintiff did not fail to comply with the rule and there are no grounds for any further action by the Court.

### 2.   *Plaintiff States a Cognizable Claim that Should Not be Dismissed*

The Court *sua sponte* asked Plaintiff to demonstrate that it has stated a claim under Rule 12(b)(6). Plaintiff respectfully responds to the Court's show cause order on point (c), (Dkt. 32 ¶ 5), below.

In these cases, Plaintiff has been permitted to obtain account holder information but not allowed to conduct further discovery prior to being required to identify defendants by name. Nonetheless, Defendants are named with greater certainty than merely the fact that they are the account holder, and with facts that more than make the allegation of infringement by the named defendant plausible. Thus, at this stage, Plaintiff established (and has alleged) that copyright infringement of Plaintiff's motion picture occurred at the specific IP address assigned to the named Defendant at a specific date and time (Dkt. 11 at ¶ 10, ¶¶ 18-23). In addition, the infringement was not a single isolated event, but rather an instance of significant BitTorrent activity in which Defendant's IP address participated during the relevant period (Id. at ¶ 12; *see also* Dkt. 29, ¶¶ 38-41 & Ex. D). Given the amount of activity (that is, as noted above, Defendants are repeat offenders), there is a high probability that the account holder is directly involved and aware of the activity. The materials shared and downloaded would not be of interest to a child, thereby suggesting an adult at the residence (Id.), and the physical location and layout of Defendant's residence makes it unlikely that his IP address was hijacked by a neighbor or passerby (Id. at ¶ 14).[1]

---

[1] See also the expert report of Dr. G. Mitchell of Future Focus, Inc. prepared specifically for *Cobbler v. James*, Case No. 15-cv-1430TSZ to address the WiFi questions raised by the Court in that case.

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 9
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

The above allegations, tied to the background investigation, satisfy the requirements to state a claim for relief. A complaint fails to state a claim upon which relief may be granted if the plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should only dismiss a complaint for failure to state a claim if, taking all factual allegations as true, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 662; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). This standard is not, however, akin to a "probability requirement." Rather, it only asks for "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In the present case, the fact of infringement is not only plausible, it is highly probable.

Accordingly, Plaintiff has pled "facts tending to exclude the possibility that [an] alternative explanation is true," as has been required by this Court. These factual assertions are more than "formulaic recitation of the elements" or "bare legal conclusion," and specifically allege that Defendant copied Plaintiff's work. They provide fair notice of the infringed copyright and how the unauthorized copying occurred. Plaintiff's infringement claim is "plausible on its face," and readily pass the *Twombly/Iqbal* standard for notice pleading. Such pleadings have been found adequate to defeat similar motions for dismissal in other cases in this jurisdiction. This claim has survived a number of similar motions to dismiss in this jurisdiction. *See, e.g., Cobbler Nevada v. Hamilton*, 16-cv-1616TSZ Dkt. 84 (July 28, 2016); *QOTD Film v. Does*, 16-cv-371RSL Dkt. 70 (October 11, 2016); *Criminal Prod. v. Winter*, 16-cv-1647RAJ Dkt. 36 (June 29, 2017); *Cook Prod. v. Swanicke*, 16-cv-1884TSZ Dkt. 68) (August 24, 2017); *Criminal Prod. v. Does*, 17-cv-102RAJ (January 8, 2018).

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 10
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Noteworthy is *Criminal Prod.* case 16-cv-1647—which is based on due diligence and pleadings comparable to those in the present case. In *Criminal Prod.*, the Court specifically addressed the same *Twombly/Iqbal* standard and distinguished an earlier case in this jurisdiction in denying a similar motion for dismissal. (*Criminal Prod.*, Dkt. 36, pp. 3-4; *see also QOTD* Film, Dkt. 70, pp. 3-4) Plaintiff respectfully submits that as in *Criminal Prod.* and earlier cases, it has in this case pled sufficient facts—which much be taken as true—to support its allegations and meet the threshold requirement to defeat dismissal. Accordingly, Plaintiff respectfully submits that its amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

It is unclear what further, if anything, beyond the assertions of the pleadings the Court may be referencing when it requests Plaintiff to further show cause why its claims should not be dismissed for "failure to state a cognizable claim." After outlining its copyright infringement claims, including a detailed description of the technology used for the infringement (*see* Dkt. 11. ¶¶ 27-39), Plaintiff specifically identified Defendant by name and address as the party which, "based on the investigation to date, and on information and belief," was the responsible party. (Id. ¶¶ 17, 18-23) The *Twombly/Iqbal* standard for notice pleading requires nothing more.

## C.   THE COURT'S OTHER CONCERNS ARE BASED ON INACCURACIES AND UNSUPPORTED ASSERTIONS

The Court raised additional concerns that appear to originate from online BitTorrent advocacy blogs and defense-counsel letters raising a myriad of defenses to Plaintiff's claims. However, none of these defenses have merit, and many have already been debunked by numerous courts around the country, as discussed below.

Plaintiff is concerned that, insofar as the basis for the show case order may be found in websites and letters that are not part of the record in this case, and which are not under oath and cannot be squarely confronted in this response, that its Due Process rights may be violated. While Plaintiff believes it can fully satisfy the Court with the present submission, in the event the Court

LOWE GRAHAM JONES™

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

finds support in any of the materials cited in its Order (such as the letter of Christopher Lynch, or content on a website), Plaintiff requests the opportunity to conduct discovery into such assertions in order to defend itself. Specifically, Plaintiff and its counsel request the opportunity for third-party discovery of the purveyors of the cited online sources, as well as Mr. Lynch, whose unsubstantiated letter containing accusations in the *Collins* case appear to form the basis for much of the Court's criticisms.[2] If any remedy is to be imposed that in any way relies on these sources, Plaintiff's due process rights surely demand that it be given the opportunity to know and confront its accusers in this regard, and to thereby prove that none of them have any evidence (let alone reliable, credible, and admissible evidence) to support their assertions.

1.   ***No Ethical Issues are Implicated by Plaintiff's Investigations; Plaintiff's Data Providers are Not Subject to the Licensing Requirements of RCW 18.165, and Committed no Crime***

As explained in detail below, given that (1) on its face, RCW 18.165.150 does not apply to Plaintiff's investigators because that they are not located in Washington and do not conduct any private investigation in Washington; (2) Plaintiff's investigators easily fall within an exception of the statute; and (3) courts around the country have long rejected this argument—saying it "borders on the frivolous"—Plaintiff's counsel reasonably believed at the time—and continues to believe to date—that no Court would give weight to the frivolous claim that its investigators committed a crime, and that disclosure would not be required because it was not in any way material.

Plaintiff has further confirmed through independent assessment by an ethics professional that its actions do not constitute any impropriety or violate any ethical or other duty to the Court or the bar. (Hricik Dec. ¶¶ 2, 4-19) Professor Hricik unequivocally concluded that there was no ethical violation:

---

[2] The Court appears to rely on its own *ex parte* investigations, as well as give credence to unsubstantiated assertions posted on various websites or in defense counsel letters in unrelated cases. Plaintiff submits that such judicial fact-finding runs contrary to the mission of independent judiciary. See Declaration of Professor David Hricik, submitted herewith, n. 1.

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 12
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1
2
3
4
5
6

> Perhaps more importantly, if a reasonable lawyer would believe that the statute did not reach Mr. Arheidt's activities in Germany, then Mr. Lowe did not breach any duty of candor. This is because the comment to Washington Rule 3.3(f) states: 'The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer *and that the lawyer reasonably believes are necessary to an informed decision*.' (Emph. added.). No court should encourage lawyers to load up a record with irrelevant information, because that could bury the important facts and be inefficient.

> In my opinion, a reasonable lawyer would not believe that the statute reached Mr. Arheidt's activities in Germany. . . .

7

(Id. ¶¶ 11-12).

8

**Plaintiff's Investigations Do Not Occur in Washington**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

There can be no possibility of a violation of the Washington investigator statute because the investigations do not occur in Washington. Neither GuardaLey Ltd. ("GuardaLey"), the data provider; MaverickEye, UG ("MEU"), the licensee of the infringement detection system; nor Daniel Arheidt, the consultant and "investigator" regarding the IP address and related infringement, are subject to the licensing requirements of Revised Code of Washington Chapter 18.165. RCW 18.165.150 prohibits unlicensed investigation by "any person who performs the functions and duties of a private investigator *in this state* without being licensed." (emphasis added) GuardaLey and MEU are German companies, and neither it nor MEU is a company organized, existing, located or operating in Washington State. They have no employees or agents in Washington. They conduct no business in Washington. They pay no taxes in Washington. Their servers do not detect or record evidence of infringement in Washington State. Indeed, their servers and all employees or consultants are located in Germany and thus the analysis is conducted in Germany. Mr. Arheidt lives and works in Germany, and has never performed any of his services in Washington State. (See Dkt. 29 ¶¶ 3, 5; Supp. Perino Dec. ¶¶ 16-17, 24; Arheidt Dec. ¶¶ 6-18, 20)

24
25
26

After exhaustively researching this issue, Plaintiff was unable to locate a single case supporting the proposition that a person located outside the state, who conducts online research

PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER - 13

INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

and investigation outside the state, is violating RCW 18.165.150. Even if GuardaLay, MEU or Mr. Arheidt resided in Washington or performed investigation of the IP addresses in Washington—which they do not—they would likely fall within one or more exemptions provided by RCW 18.165.020, e.g., (10) "A person who is a forensic scientist, accident reconstructionist, *or other person who performs similar functions and does not hold himself or herself out to be an investigator in any other capacity*." (emphasis added).[3]

**Plaintiff's Investigations Occur in Public Forums with No Expectation of Privacy**

Further, RCW 18.165.150 cannot possibly apply to MEU's detection and collection of infringement evidence because RCW 18.165.020 provides that the private investigator licensure requirement does not apply to "[a] person solely engaged in the business of securing information about persons or property from public records[.]" The Court's order uses the term "surveillance," suggesting that Plaintiff's investigator has somehow reached into or looks into the computers of Washington residents, but that is inaccurate. Plaintiff's investigators do not access any of the Defendants' computers in any way, and do not plant software on them, look into them, or "surveil" them in any manner. Rather, and consistent with the RCW, the information that MEU collected was readily accessible to the general public because it is sent out into the public by the Defendants themselves.

MEU's infringement detection system enters public BitTorrent swarms just as any regular BitTorrent user would. The swarm contains multiple BitTorrent users who are all downloading and uploading the same work between and among themselves. MEU's system then receives information from a computer connected to the Internet from a defendant's IP address and which transmits the data directly to MEU's server. All of these steps are taken in the ordinary and normal course of using a BitTorrent protocol. The only difference between a BitTorrent user and MEU is

---

[3] The statute defines "forensic scientist" or "accident reconstructionalist" to mean "a person engaged exclusively in collecting and analyzing physical evidence and data relating to an accident *or other matter* and *compiling such evidence or data to render an opinion of likely cause, fault, or circumstance of the accident or matter*." (emphasis added)

LOWE GRAHAM JONES ℡

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

that instead of using a regular publicly available BitTorrent client to accomplish these steps, MEU uses a specialized client which was developed so that MEU cannot redistribute content it receives back into the BitTorrent swarm. MEU simply made a record of each transaction in which each defendant's computers voluntarily sent pieces of data (here, pieces of Plaintiff's motion picture) to MEU. Thus, in summary, defendants voluntarily send their IP address identifying information out into the public through the swarm, and Plaintiff does not reach into the defendant's computer to retrieve it. The IP address information is transmitted as part of the metadata relayed between computers during a TCP/IP connection. Similarly, Plaintiff's "Additional Evidence," which shows a detailed download history of other third-party works emanating from a Defendant's IP address, is information that is also publicly available. As such, Plaintiff falls within the exception listed. (See Supp. Perino Dec. ¶¶ 24-25; Declaration of Stephen M. Bunting, ¶ 44) Accordingly, no violation of Washington laws occurred.

**Relevant Legal Authority Confirms No Violation of Private Investigator Statutes**

Plaintiff and its counsel are not aware of any authority in support of the applicability of the Washington statute in this case. However, BitTorrent defense groups, in their advocacy blogs, have long asserted that similar statutes in other states have been violated by investigators, even though these very arguments have been rejected by a number of courts around the country (and, indeed, every court Plaintiff is aware of that has considered the question). Among the earliest cases was *Capital Records, Inc. v. Thomas-Rasset*, 2009 U.S. Dist. LEXIS 50075 (D. Minn. June 11, 2009). The case involved MediaSentry, which utilized software to investigate and identify BitTorrent (peer-to-peer) infringement involving copyrighted musical recordings. Defendants argued that MediaSentry violated the Minnesota Private Detective Act, which precluded investigation in the state without a license, and defined investigation to include "obtaining through investigation evidence to be used before any authorized investigating committee, board of award, board of arbitration, administrative body, or officer or in preparation for trial of civil or criminal cases." *Id.* at *4. Defendant asserted that MediaSentry improperly "investigated the identity of the user of the

LOWE GRAHAM JONES ᴾˡˡᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

computer from which it downloaded the songs at issue in this lawsuit and when it obtained evidence of the copyrighted songs on Defendant's computer." Id. at *5. The court concluded that MediaSentry was not subject to the Minnesota Private Detective Act, for several reasons, including:

> MediaSentry does not operate within Minnesota. It has no employees in Minnesota and does not conduct any activities in Minnesota. It pays no taxes in the state and has no agent for service of process here. MediaSentry conducted no activity in Minnesota relating to this case, and all of the information it received was sent by Defendant from her computer to MediaSentry's computer in a state other than Minnesota. Merely monitoring incoming internet traffic sent from a computer in another state is insufficient to constitute engaging in the business of private detective within the state of Minnesota.

(Id. at *6, internal citations omitted) Other courts have agreed, finding that the fact that (1) investigators were located outside the state, and (2) investigations occurred outside the state, meaning that the statutes did not apply.

In *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 257 n. 21 (D. Maine Oct 29, 2008), for example, the Court declines to prohibit testimony from a foreign investigator in a copyright infringement case again involving peer-to-peer infringement. Noteworthy, the court declined to decide whether the statute applied to Internet searches of the type undertaken, the court explained how online investigation was different in character from a typical in-state investigator, whose investigators occur online from locations geographically remove from the state, and how it "cannot be correct" that it requires a private investigation (what would be subject to such license requirement) to "determine that the University of Maine is the Doe Defendants' ISP, that some persons using that ISP are perhaps using online media distribution systems, such as Gnutella, and that a peer-to-peer file sharing network allows users to reproduce and distribute copyrighted works anonymously." *Id*. at 257; *accord Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 38718, *8-9 (N.D. Ill. Mar 24, 2014) (refusing to quash a discovery subpoena based on defendants' claim that the BitTorrent investigator was unlicensed).

LOWE GRAHAM JONES ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Most recently, when the same "foreign investigator" defense was recycled again in a California BitTorrent case directly analogous to the cases at bar, the court pulled no punches in characterizing this argument as "border[ing] on the frivolous:"

> Defendant further suggests that Mr. Fieser is not licensed as a private investigator in California, and that the court therefore should not accept his testimony. **That argument borders on the frivolous**. Individuals provide evidence in court every day without necessarily being licensed as private investigators. Significantly, defendant cites no legal authority for the proposition that Mr. Fieser, a German resident, required a California private investigator license to perform the type of work he did for plaintiff, or to provide evidence regarding such work in court.

*Malibu Media, LLC v. Doe*, 2017 U.S. Dist. LEXIS 30632 (E.D.Ca. Mar 3, 2017) (emphasis added). In short, Plaintiff has not located a single case in which out-of-state investigators engaging in BitTorrent analysis have been found to violate any criminal statute of the type at issue here.

Plaintiff appreciates the proposition that the use of an investigator who committed a crime in the course of the investigation should be disclosed in an *ex parte* proceeding. But as explained in detail above, if no reasonable attorney would expect that the assertion is material, and where the assertion is so baseless that it has been characterized as frivolous by other courts, Plaintiff did not need to advise the Court here of such unfounded and frivolous accusations. Accordingly, the investigators did not violate any Washington laws, and Plaintiff and its counsel did not violate any Rules of Professional Conduct.

### 2.   *Plaintiff's Investigators are Not "aliases or even fictitious"*

The Court expressed concern that the German investigators that have been used by various plaintiffs in different BitTorrent cases in different jurisdictions over the last decade "might be aliases or even fictitious." The Plaintiff and undersigned counsel appreciate the desire of the Court to ensure that this proposition is not true, but at the same time it is disheartening that the Court could believe that they would even remotely consider such practices. Not only are each of the individuals listed above real people, many have actually testified in depositions and federal court evidentiary hearings in the United States or other jurisdictions. This assertion, as with others

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 17
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES ᴾᴸᴸᶜ
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

addressed above, underscores the problems inherent in relying on evidence not submitted to the court under oath, and which has not been challenged through depositions or other discovery techniques.

The source relied upon by the Court refers to certain persons by name, speculating that they are aliases or do not exist. While none of the referenced individuals other than Daniel Arheidt are relevant to the cases captioned here, and apart from Mr. Arheidt and Daniel Macek, none have been used by Plaintiff or its counsel, to assure the Court there is no merit to the numerous conspiracy theories, undersigned counsel has undertaken to locate and provide proof that Daniel Arheidt, Darren Griffin, Daniel Macek, Daniel Susac, Tobias Fieser and Michael Patzer are not aliases or fictitious individuals. The submitted Arheidt Declaration speaks directly to his name, background and existence, as well as his relationship to the other individuals, where applicable.[4] With respect to the remaining individuals, the submitted Lowe Declaration compiles and explains the documents and other information confirming to the extent reasonable and possible under the circumstances their name, existence and relationship to each other, which includes confirmation of governmental identification, transcript excerpts from testimony provided in other cases, and a detailed explanation of each individual's relationship (or former relationship) with GuardaLey, MEU or any other companies which Plaintiff knows of or which they have worked with in the past. (Lowe Dec. ¶¶ 2-18; see also Supp. Perino Dec. ¶¶ 12-22)

### 3.   *Technology Used in BitTorrent Copyright cases is Reliable and verified by Experts and Other Courts*

Since the details of the MEU infringement detection system are technical, Plaintiff refers to the expert report of Benjamin Perino, Chief Executive Officer and Senior Developer at GuardaLey, which licenses the backend software and servers to MEU. (Dkt. 29) Mr. Perino's report (1) provides his credentials (¶¶ 1-13), (2) describes the technology in great detail (¶¶ 14-25), and (3) explains that the

---

[4] This is specifically in response to the Court's request at Dkt. 32, n. 2.

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 18
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES ᴾᴸᴸᶜ

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

1    TCP/IP connections cannot be "spoofed" or yield false positive results (¶¶ 26-37) generally and as

2    applied in these cases. (Id.)

3         The Court criticized Mr. Perino's qualifications as consisting of a "technical high school

4    education and work experience unrelated to the peer-to-peer file-sharing technology known as

5    BitTorrent[.]" Pursuant to Fed. R. Evid. 702, a witness is qualified as an expert by "knowledge, skill,

6    experience, training, or education." Mr. Perino's report establishes that he possessed years of specialized

7    experience in the Information Technology industry and, specifically, has spent the last 10 years

8    developing anti-piracy technology for use in the BitTorrent network. To the extent this was not made

9    clear in Mr. Perino's report, Plaintiff submits a supplemental declaration of Mr. Perino that further

10   confirms that his extensive work experience may qualifies him as an expert in BitTorrent and peer-to-

11   peer technology. Additionally, as stated in his report, Mr. Perino has been subpoenaed to testify either at

12   deposition or trial on this specific BitTorrent technology. Of those listed, he has in fact testified as an

13   expert in these cases. (Supp. Perino Dec. ¶¶ 4-11)

14        Respectfully, the Court appears to have inadvertently overlooked the declarations of two

15   independent experts, Dr. Simone Richter and Mr. Robert D. Young, who evaluated the infringement

16   detection system. (Dkt. 29-1, Exs. E & F) These experts further confirm the accuracy of the system.

17   Understanding that this Court and numerous defense counsel struggled with an understanding of MEU's

18   and similar technology and its international experts and witnesses, Plaintiff has secured another technical

19   expert, Stephen M. Bunting of Lewes, Delaware, to thoroughly evaluate the system. Mr. Bunting has

20   recently provided an expert report describing his test of the GuardaLey/MEU infringement detection

21   system. Mr. Bunting's report confirms that the system accurately detects and records IP addresses

22   transacting within the BitTorrent network. His report also confirms that Mr. Perino's expert report

23   accurately describes what the infringement detection system does, and its effectiveness and accuracy.

24   Mr. Bunting's report provides a fourth expert witness—along with that of Mr. Perino, Dr. Richter and

25   Mr. Young. (Bunting Dec. ¶¶ 1-46)

26

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 19
INIP-6-0088P18 RESPSC

### 4.     MEU'S Technology Does Not Yield False Positives nor Does It Employ Hacking or Spoofing of the IP Addresses

The Court challenges Mr. Perino's initial assessment that the infringement detection system "cannot yield a false positive" because Mr. Perino "does not have the qualifications necessary to be considered an expert in the field in question" and "his opinion . . . is both contrary to common sense and inconsistent with plaintiff's counsel's conduct in other matters in this district." Plaintiff respectfully submits that these propositions are in error.

As explained above, Mr. Perino is fully qualified as an expert pursuant to Fed. R. Evid. 702 as a person with "knowledge, skill, experience, training, or education"—regardless of his level of formal education. (Dkt. 29, ¶¶ 3-11; see also Supp. Perino Dec. ¶¶ 4-11) While critical of his "education," the Court provides no support for its conclusion that Mr. Perino's "knowledge, skill, experience, training" fail to quality him as an expert for this purpose. Moreover, as noted, Mr. Perino's opinions on the technology he developed have been further confirmed by no fewer than three independent experts.

The Court concludes, without more, that Mr. Perino's opinion regarding false positives is "contrary to common sense." It is unclear what the Court is relying on in reaching this conclusion, and Plaintiff submits this is not a matter of judicial notice. Though there may be ways for individuals to hide or mask their IP addresses in some settings, and perhaps the Court is aware of such concepts, they have no applicability here. As explained in detail in Mr. Perino's report, the reason there are no false positive errors is because the infringement detection system makes a direct TCP/IP connection or "handshake" with the IP address and port where the infringement occurred to confirm the transaction. See also the expert report of Dr. Richter, which also addresses this issue and supports Mr. Perino's conclusion. (Dkt. 29-1 at 11.4-11.14, 11.19-11.22, 11.26-11.30) This has been yet further confirmed in the Bunting report. (Bunting Dec. ¶¶ 38-43)

This "false positive" issue is yet another old argument recycled by BitTorrent infringement blogs and advocates despite being disproven, and has been addressed by expert testimony in analogous cases. For example, an industry expert Michael Patzer provided extensive testimony

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 20

INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES℠

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

before the Honorable Judge Steven I. Locke in the Eastern District of New York on April 20, 2016 in *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 98.116.160.61*, Case No. 15-cv-3504, Dkt. 34-1 (E.D. NY June 3, 2016). Mr. Patzer's testimony pertained to the analogous investigative software used by Excipio addressing the "false positive" issue raised by this Court. Mr. Patzer specifically distinguished the modern investigative technology used by Excipio (and MEU) that uses ***direct*** monitoring from the ***indirect*** detection technology historically used and often referenced by defense counsel. (See Lowe Ex. B, pp. 30-48, in particular pp. 39-45)

Finally, the fact that plaintiffs have elected to dismiss its claims in other cases is not an indication that "false positive" errors have occurred. In this jurisdiction alone, plaintiff have voluntarily dismissed many claims for various reasons. Often plaintiffs make a strategic determination—as is often done in virtually any type of litigation—that the particular case is not worth pursuing at that time. For example, a plaintiff may dismiss a case if the ISP subpoena response establishes that the Defendant is actively serving in the military, or if the Defendant is experiencing financial or physical hardship, or if Defendant is a company and locating the infringer would be too costly or burdensome on Plaintiff.

The Court points to a series of letters from Mr. Lynch on behalf of clients whose claims were dismissed after his submission of the letter as proof of a "false positive" result with MEU's infringement detection system. But dismissals in these and other such cases had nothing to do with the veracity of the technology. Plaintiff reviewed each case listed in the Court's Order, and was able to determine that none of the respective defendants had been dismissed because of a "false positive" result or other data problem. The data in each case listed confirms that the infringement occurred at the household via the noted IP address at the date and time indicated. To the best of their recollection, Plaintiff's counsel has never dismissed a case because of a "false positive." This is because no Defendant has ever presented evidence of a "false positive" error. As explained by one court, it would be a "disingenuous" argument to jump to the conclusion that dismissing a case necessarily suggests that a plaintiff identified the wrong defendant. *Malibu Media, LLC v. Doe*, 2017 U.S. Dist. LEXIS 30632, *9 n.4 (E.D. Cal. March 3, 2017).

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 21
INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

Instead, as explained above, a case against an individual defendant may be dismissed because the particular case is simply not worth pursuing at that time. With tens of thousands of BitTorrent copyright infringers nationwide, it has always been necessary for plaintiffs to focus on only a segment of the infringement claims available in their efforts at education and deterrence. The Lynch letter in particular raised a myriad of factual and legal arguments that seem disconcerting taken alone but which can be wholly disproven. Earlier in these cases plaintiffs made the decision that undertaking the significant legal work to debunk such arguments would not be an efficient use of judicial resources. More recently, however, in consideration of the possibility that the Court or others might take the dismissal as a tacit concession that anything in the letters was true, Plaintiff no longer dismisses any cases based on such flawed and false allegations, and instead refutes them directly. Plaintiff's responses to the two show cause orders in this case, as well as the response in *Cobbler v. James*, Case No. 15-cv-1430TSZ, are prime examples.

Plaintiff respectfully submits that it has more than met the requirements under law and applicable rules to proceed with its cases. Plaintiff's copyrights have not been credibly challenged, it more than states a plausible claim against defendants, and is entitled to enforce its federal copyrights. Indeed, the courts exists precisely for this purpose.

RESPECTFULLY SUBMITTED February 5, 2018.

s/David A. Lowe, WSBA No. 24,453
 Lowe@LoweGrahamJones.com
LOWE GRAHAM JONES<sup>PLLC</sup>
701 Fifth Avenue, Suite 4800
Seattle, WA 98104
T: 206.381.3300

Attorneys for Plaintiff

LOWE GRAHAM JONES PLLC

701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
206.381.3300 • F: 206.381.3301

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 22
INIP-6-0088P18 RESPSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served to all counsel or parties of record who are deemed to have consented to electronic service via the Court's CM/ECF system, and to all Defendants at their last known address via U.S. mail.

s/ David A. Lowe

PLAINTIFF'S RESPONSE TO SHOW CAUSE
ORDER - 23

INIP-6-0088P18 RESPSC

LOWE GRAHAM JONES PLLC